UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re ROBERT J. SPENLINHAUER, individually and as trustee and beneficiary of RJS REALTY TRUST, C.C. CANAL REALTY TRUST, and CLASSIC AUTO REALTY TRUST,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 11<br>13-19191-JNF |
| ROBERT J. SPENLINHAUER,<br><br>Appellant,<br><br>v.<br><br>THE COOPERATIVE BANK OF CAPE COD,<br><br>Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Bankruptcy Appeal No.<br>15-14124-FDS |

MEMORANDUM AND ORDER ON
APPELLEE'S MOTION TO DISMISS BANKRUPTCY APPEAL

**SAYLOR, J.**

This is an appeal from an order of the United States Bankruptcy Court for the District of Massachusetts. In 2006, debtor-appellant Robert Spenlinhauer entered into a $1.2 million revolving credit agreement with appellee the Cooperative Bank of Cape Cod. The loan was secured by a mortgage on Spenlinhauer's property in Osterville, Massachusetts. In December 2013, Spenlinhauer filed a Chapter 11 bankruptcy petition. At that point, he owed the bank nearly $1.2 million. In February 2014, the bank moved for relief from the automatic stay in

order to foreclose on the property. The bankruptcy court granted that relief, and the bank scheduled a foreclosure sale.

In October 2015, before the foreclosure sale, the bankruptcy court granted Spenlinhauer's motion to reinstate the stay for 90 days, over the bank's objection. On November 6, 2015, the bankruptcy court issued an order directing the debtor to file an amended plan that would, among other things detailed below, provide for a sale of the Osterville property within 120 days after the plan's effective date.

Spenlinhauer has appealed that order. Specifically, Spenlinhauer is appealing only the part of the November 6 order that directs him to present a plan providing for a sale of the Osterville property. In his appeal, Spenlinhauer asks this Court to vacate "the order of the bankruptcy court ordering the sale of the [Osterville property] within 120 days of confirmation of a plan."

Before the Court is the bank's motion to dismiss Spenlinhauer's bankruptcy appeal as moot, or in the alternative, for an extension of time to respond to his appeal brief.

For the following reasons, the motion to dismiss will be granted.

I.      **Jurisdiction and Standard of Review**

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). In reviewing the bankruptcy court's decision, this Court functions as an appellate court and is authorized to "affirm, modify, or reverse a bankruptcy judge's [order] or remand with instructions for further proceedings." *In re Bernard L. Madoff Inv. Sec., LLC*, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016).[1]  The

---

[1] As courts have recently noted, the quoted language was found in the former Federal Rule of Bankruptcy Procedure 8013, but was omitted from the amended Federal Rules of Bankruptcy Procedure, effective December 1, 2014. "Nevertheless, 'logic still compels the same conclusion with respect to the appellate powers of the District

bankruptcy court's conclusions of law are reviewed *de novo*; its findings of fact are reviewed for clear error.  *See Stornawaye Fin. Corp. v. Hill (In re Hill)*, 562 F.3d 29, 32 (1st Cir. 2009) (citing *In re Healthco Int'l, Inc.*, 132 F.3d 104, 107 (1st Cir. 1997)).  Mixed questions of law and fact are also reviewed for clear error, "unless the bankruptcy court's analysis was based on a mistaken view of the legal principles involved."  *In re Carp*, 340 F.3d 15, 22 (1st Cir. 2003).

## II. Background

The following facts are drawn from the bankruptcy court filings and the designated record on appeal.

In April 2006, Robert Spenlinhauer, individually and in his capacities as trustee and beneficiary of several trusts, executed a $1.2 million revolving credit agreement and note with the Cooperative Bank of Cape Cod.  The note was secured by a mortgage on a property in Osterville, Massachusetts, owned by Spenlinhauer.

In August 2013, Spenlinhauer stopped making payments on the loan.  The bank sent Spenlinhauer a notice of default, informing him of its intention to begin foreclosure proceedings on the Osterville property.  On December 16, 2013, Spenlinhauer filed a voluntary Chapter 11 bankruptcy petition.  As of the bankruptcy filing date, the outstanding principal amount due on the loan was $1,199,978.

On February 28, 2014, the bank moved in the bankruptcy court for relief from the automatic stay in order to foreclose on the Osterville property.  Spenlinhauer initially opposed that motion, but later withdrew his opposition.  On July 23, 2014, the bankruptcy court granted the bank relief from the automatic stay in order for it to begin foreclosure proceedings.

After delays due, in part, to disputes between the bank and other creditors over the

---

Court.'"  *Madoff*, 2016 WL 183492, at *8 n.14 (quoting *In re Great Atl. & Pac. Tea Co.*, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015)).

priority of liens on the Osterville property, the bank scheduled a foreclosure sale for November 19, 2015.

Meanwhile, on October 6, 2015, Spenlinhauer filed a disclosure statement and second amended plan of reorganization in which he stated that he wished to retain the Osterville property and cure the arrearages to the bank by "making [] payments from future social security payments or from the anticipated surplus . . . from the sale of [other real estate] or from insurance proceeds relative to [other real estate]." (B.R. 182).

On October 16, 2015, Spenlinhauer moved to reinstate the stay for a period of 90 days. (B.R. 216-19). In his motion, Spenlinhauer reemphasized his desire to retain the Osterville property and cure the arrearages to the bank by other means. He stated that the equity in the Osterville property was "over and above the claim of the Bank," and that the property was necessary for an effective reorganization because it was his current residence. He stated that he was "hopeful that the Court will approve the disclosure statement on October 28, 2015 [when a hearing was scheduled] . . . and that a hearing on the confirmation of the second amended plan will occur sometime in late November or early December 2015." (B.R. 217). Because the foreclosure sale was scheduled for November 19, Spenlinhauer requested expedited consideration of his "request[] that th[e] Court reinstate the automatic stay for a period of 90 days to allow the second amended plan to be considered and hopefully confirmed by th[e] Court, part of which will fund the curing of arrearages to the Bank." (B.R. 218).

The bank opposed Spenlinhauer's motion for reinstatement of the stay, expressing its desire to proceed with the foreclosure proceedings. Essentially, the bank contended that Spenlinhauer's proposed plan to cure his arrearages by selling other property was "[i]nfeasible" and insufficiently detailed to be confirmable. (B.R. 231-36). On October 28, 2015, the

bankruptcy court sustained the bank's objections and ordered Spenlinhauer to file a third amended plan and disclosure statement by November 13, 2015.

Also on October 28, 2015, the bankruptcy court held a hearing on Spenlinhauer's motion to reinstate the stay. On November 6, 2015, the bankruptcy court granted Spenlinhauer's motion and reinstated the stay. The bankruptcy court held that the "debtor's change in circumstances warrant[ed] interim relief" in the form of a 90-day temporary reinstatement of the stay and postponement of the foreclosure sale. The bankruptcy court authorized the bank to continue the foreclosure sale to a date after February 15, 2016, and "as adequate protection for the Bank's interest in the property," set a payment plan ordering Spenlinhauer to pay the bank $35,000 by November 20, 2015, and $5,000 per month beginning January 1, 2016. The court concluded:

> As ordered on October 28, 2015, the Debtor shall file a[] [third] amended plan and disclosure statement by November 13, 2015, which shall provide for a sale of the [Osterville] property within 120 days after the effective date of confirmation of the plan. In the event the plan is confirmed, the Court will enter further orders respecting adequate protection of the Bank's interest in the property, including the appropriate allocation of the adequate protection payments in connection with the hearing on confirmation of the Chapter 11 plan.

(B.R. 266).

On November 20, 2015, Spenlinhauer moved for clarification of the bankruptcy court's November 6 order to "provide for a sale of the Osterville property" in his third amended plan. Specifically, he contended:

> Said portion of the order is vague since there [is] no [] indication of a sale price nor what will occur if a buyer for the property is not located. In addition, the debtor's prior plan had provided for a cure-and-maintain status for the property, which will be subject to dispute by Cape Cod Cooperative Bank, but the debtor will present evidence to this court that such a plan will be feasible.

(B.R. 267-68). The bankruptcy court denied Spenlinhauer's motion for clarification without comment on November 24, 2015.

5

On December 8, 2015, Spenlinhauer filed this appeal, limited to the bankruptcy court's November 6, 2015 order directing him to provide a plan for a sale of the Osterville property in his third amended plan.

On December 15, 2015, the bankruptcy court, based on certain conduct by Spenlinhauer during the bankruptcy proceedings, appointed a Chapter 11 trustee.[2] On January 5, 2016, Spenlinhauer filed a third amended plan and disclosure statement that did not comply with the bankruptcy court's November 6 order to set forth a plan for selling the Osterville property. On January 27, 2016, Spenlinhauer filed a fourth amended plan and disclosure statement that also did not comply with the November 6 order. On February 2, 2016, Spenlinhauer moved to extend the automatic stay so that the bankruptcy court could consider his fourth amended plan. The bankruptcy court scheduled a hearing on that motion for March 22, 2016.

### III.   Analysis

Spenlinhauer's appeal is somewhat limited. He does not contend that the bankruptcy court's 90-day extension of the automatic stay was in error, or that the period was too short. Nor does he challenge the parts of the bankruptcy court's November 6 order setting a schedule of payments to the bank.

Rather, he contends that the "vague and uncertain language" of the bankruptcy court's November 6 order—specifically, the part concerning sale of the Osterville property—was in error. His request for relief is unclear; the appeal concludes "[t]he order of the bankruptcy court ordering the sale of the real estate within 120 days of confirmation of a plan should be vacated."

---

[2] Among other things, Spenlinhauer's conduct during the bankruptcy proceeding included transferring insurance proceeds to non-debtor-in-possession bank accounts; paying an insurance adjuster without court approval; and paying $65,000 to a secured creditor to redeem a recreational vehicle and to purchase another vehicle. (B.R. 76).

(Appellant Br. 6). The bank contends that Spenlinhauer's appeal should be dismissed as equitably moot because no meaningful relief can be granted.[3]

However, equitable mootness does not appear to be the correct framework for Spenlinhauer's appeal, at least for this stage of the proceedings. "The 'equitable mootness' doctrine imports both 'equitable' and 'pragmatic' limitations upon [courts'] appellate jurisdiction over bankruptcy appeals." *In re Healthco Int'l, Inc.*, 136 F.3d 45, 48 (1st Cir. 1998). Essentially, the equitable mootness test "inquires whether an unwarranted or repeated failure [by a debtor] to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible." *Id.* Conversely, the "pragmatic mootness test" inquires whether "the challenged bankruptcy court order has been implemented to the degree that meaningful appellate relief is no longer practicable even though the appellant may have sought a stay with all due diligence." *Id.*

Here, where the bankruptcy court has not yet issued a ruling on a proposed plan, and instead has simply ordered debtor to *include certain conditions* in his proposed plan, the correct framework appears to be simple mootness rather than equitable mootness. *See Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489, 492 n.5 (1st Cir. 1997) (quoting *In re UNR Indus.*, 20 F.3d 766, 769 (7th Cir. 1994) ("There is a big difference between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the outcome (equitable mootness). Using one word for two different concepts breeds confusion." (emphasis in original))).

Spenlinhauer is asking the Court to "vacate" the "order of the bankruptcy court ordering the sale of the [Osterville] real estate within 120 days of confirmation of a plan." (Appellant Br. 6). However, the bankruptcy court did not in fact order him to sell the Osterville property within

---

[3] In the alternative, the bank requests an extension of time to respond to Spenlinhauer's appeal.

120 days of confirmation of a plan—at least not yet.  Rather, in its November 6 order, the bankruptcy court directed Spenlinhauer to "provide for" a sale of the property in his third amended plan, presumably because, in part, debtor previously indicated that there was equity in the Osterville property beyond the amount of the debt.

The bankruptcy court has not yet held a hearing on Spenlinhauer's various proposed plans, nor has it ordered Spenlinhauer to do anything with, much less sell, the Osterville property yet.  It appears that Spenlinhauer may still propose a reorganization plan that allows him to retain the Osterville property while satisfying his creditors by other means.  The bankruptcy court's November 6 order simply ordered Spenlinhauer to *provide a plan* to sell the property should the court determine that his proposal to cure his arrearages by other means was infeasible, as the bank argued in its opposition.

In short, Spenlinhauer's appeal is problematic because he is requesting relief that cannot be granted:  the Court cannot vacate an order to sell a property when the bankruptcy did not issue such an order.  The 90-day reinstatement of the stay has expired, and the bankruptcy court has scheduled a hearing on Spenlinhauer's motion to continue the stay.  The case accordingly will be remanded to the bankruptcy court.

**IV.     Conclusion**

For the foregoing reasons, appellee's motion to dismiss is GRANTED, and Spenlinhauer's bankruptcy appeal is dismissed without prejudice.

**So Ordered.**

Dated:  April 13, 2016

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge